AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

FILED

for the

District of Connecticut

2018 MAR 19 P 12: 23

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

**INFORMATION ASSOCIATED WITH THE DROPBOX ACCOUNT LINKED TO EMAIL ADDRESS: joe.chimo@yahoo.com, WHICH IS STORED AT PREMISES CONTROLLED BY DROPBOX**

)
)
)
)
)
)

Case No.

US DISTRICT COURT
BRIDGEPORT CT

3 │ 8 mj 454 ( WIG )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: **Information associated with the Dropbox account linked to email address: joe.chimo@yahoo.com, which is stored at premises controlled by Dropbox as further described in Attachment A.**

located in the _____ District of _____**Connecticut**_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. § 2252A(a)(2)** | **Receipt of Child Pornography** |
| **18 U.S.C. § 2252A(a)(5)** | **Accessing with Intent to View and Possession of Child Pornography** |

The application is based on these facts:
**See Affidavit attached**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Michael Manganiello, Special Agent-Homeland Security Investigation**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __3│19│18__

s/William I. Garfinkel
_____
*Judge's signature*

City and state: **Bridgeport, Connecticut**

**William I. Garfinkel, United States Magistrate Judge**
*Printed name and title*

Case 3:18-mj-00454-WIG *SEALED*  Document 1  Filed 03/19/18  Page 2 of 27

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE APPLICATION    :    Misc. No. 3:18MJ454(WIG)
OF THE UNITED STATES OF AMERICA     :
FOR A WARRANT AUTHORIZING THE       :    **Filed Under Seal**
SEARCH OF INFORMATION ASSOCIATED    :
WITH THE DROPBOX ACCOUNT            :
LINKED to email address: joe.chimo@yahoo.com :
WHICH IS STORED AT PREMISES         :
CONTROLLED BY DROPBOX.              :

## **AFFIDAVIT IN SUPPORT OF**
## **AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Manganiello, being duly sworn, depose and state as follows:

### **BACKGROUND OF AFFIANT**

1.     I am a "federal law enforcement officer" within the meaning of Federal Rule of

Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws

and duly authorized by the Attorney General to request a search warrant. I am one of the

officers involved in the investigation that is the subject of this affidavit and have personally

participated in the investigation concerning the violations of the federal laws listed herein.

2.     I have been employed as a Special Agent of the U.S. Department of Homeland

Security, Homeland Security Investigations (HSI) since 2009, and am currently assigned to the

Office of the Resident in Charge, New Haven, Connecticut. As a Special Agent with HSI, I am

responsible for investigating and enforcing violations of Federal law to include crimes against

children as well as the enforcement of federal narcotics laws, immigration laws, the Money

Laundering Control Act, and various customs violations.

1



Case 3:18-mj-00454-WIG *SEALED*   Document 1   Filed 03/19/18   Page 3 of 27

3.       I have attended and graduated from the Criminal Investigator Training Program and the ICE-HSI Special Agent Training Program, both of which are conducted at the Federal Law Enforcement Training Center in Glynco, Georgia.  At this institution, I received specialized training including, but not limited to, the following areas: narcotics investigations, immigration investigations, fraud investigations, cyber investigations, import/export investigations, child pornography investigations, firearms, defensive tactics, surveillance, and undercover operations.

4.       I have participated in numerous criminal investigations of federal and state offenses including Narcotics Smuggling, Internet-based Child Pornography, Money Laundering, Human Smuggling, Counter-Proliferations, Intellectual Property Rights and Immigration Document and Benefit Fraud.  In the course of those investigations, I participated in interviews of witnesses and subjects in criminal cases; and the execution of numerous search warrants of personal residences and personal property, including those for which I was the affiant.

5.       During my tenure with HSI, I have participated in numerous joint inter-agency investigations.  During these investigations, I have conducted physical surveillance, executed search and seizure warrants, reviewed tape recorded conversations and conducted record checks of suspects. I have also analyzed the contents of seized cellular telephones and interviewed sources of information, including confidential sources. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the operational techniques and organizational structure of drug, weapons, currency and human smuggling organizations.

2

## INTRODUCTION

6.      I am currently investigating Brien PENNELL ("**PENNELL**"), an adult male born in 1988, who at the time of the offense conduct under investigation was residing in the area of Stamford, Connecticut, for knowingly receiving, distributing and possessing child pornography and visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252A(a) (hereinafter "the **TARGET OFFENSES**").

7.      I subscribe this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require the electronic service provider identified below to disclose to the Government copies of the information (including content of communications) further described in Section I of Attachment B, which information is associated with the following accounts:

> i) Dropbox account linked or registered to the following email address: joe.chimo@yahoo.com ("TARGET ACCOUNT"),

which is stored at premises owned, maintained, controlled, or operated by Dropbox, Inc.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

8.      Dropbox, Inc., is an electronic service provider headquartered at 333 Brannan Street, San Francisco, CA 94107 (hereinafter referred to as the "Provider" or "Dropbox").

9.      On February 7, 2018, a preservation letter was sent to Dropbox requesting preservation of the TARGET ACCOUNT.

10.      Based on the information set forth in this affidavit, I believe there is probable cause to believe that the TARGET ACCOUNT constitutes and contains items that constitute

instrumentalities, fruits, and evidence of the TARGET OFFENSES as further specified in Section II of Attachment B.

11.     The statements in this affidavit are based in part on information provided by other law enforcement officers, including CT probation officers and HSI agents in Ottawa, Canada, as well as on my investigation of this matter.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of the TARGET OFFENSES are located within the TARGET ACCOUNT, as more fully described in attachment A and B.

## JURISDICTION

12.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3). *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

13.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## STATUTORY AUTHORITY

14.     As noted above, this investigation concerns possible violations of 18 U.S.C. §§ 2252A(a) relating to the sexual exploitation of a minor.  18 U.S.C. § 2252A(a) prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for

4

distribution, selling, accessing with intent to view or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce. The statute also prohibits a person from attempting and conspiring to do the same.

### DROPBOX INC.

15.     "Dropbox" is an online storage medium on the internet accessed from a computer or electronic storage device, such as a cellular phone or tablet. As an example, online storage mediums such as Dropbox make it possible for the user to have access to saved files without the requirement of storing said files on their own computer or other electronic storage device. Dropbox is an "offsite" storage medium for data that can be viewed at any time from any device capable of accessing the internet. Users can store their files on Dropbox and avoid having the files appear on their computer. Anyone searching an individual's computer that utilizes Dropbox would not be able to view these files if the user opted only to store them at an offsite such as Dropbox. This could be viewed as advantageous for collectors of child pornography in that they can enjoy an added level of anonymity and security.

16.     Dropbox provides a variety of on-line services, including online storage access, to the general public. Dropbox allows subscribers to obtain accounts at the domain name www.dropbox.com. Subscribers obtain a Dropbox account by registering with an email address. During the registration process, Dropbox asks subscribers to provide basic personal identifying information. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying

5

subscribers, means and source of payment (including any credit or bank account number). Subscribers then access their Dropbox account by entering the associated email address and a user created password.

17.     When the subscriber transfers a file to a Dropbox account, it is initiated at the user's computer, transferred via the Internet to the Dropbox servers, and then can automatically be synchronized and transmitted to other computers or electronic devices that have been registered with that Dropbox account. This includes online storage in Dropbox servers. If the subscriber does not delete the content, the files can remain on Dropbox servers indefinitely. Even if the subscriber deletes their account, it may continue to be available on the Dropbox servers for a certain period of time.

18.     Online storage providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, online storage providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

19.     In some cases, Dropbox account users will communicate directly with Dropbox about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## DEFINITIONS

20.     The following definitions apply to this Affidavit and Attachment B:

a.     "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.     "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image of picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

7

c. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

d. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software

8

or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

      f.     "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers (ISPs) control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

      g.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

      h.     The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet,

connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i.        "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

j.        "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

k.        "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

l.        "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

m.        "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) beastiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

n.        A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

10

o. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## CHILD PORNOGRAPHY PRODUCER AND COLLECTOR CHARACTERISTICS

21. Based upon my training and experience, as well as from information provided to me by other law enforcement personnel involved in the investigation of cases involving the sexual exploitation of children, I believe the following traits and characteristics are generally found to exist and be true in cases involving individuals who produce, distribute, and/or collect child pornography:

a. The majority of individuals who produce, distribute, and/or collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b. The majority of individuals who produce, distribute, and/or collect child pornography produce, distribute, and/or collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

11

c. The majority of individuals who produce, distribute, and/or collect child pornography often seek out like-minded individuals, either in person or over the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to: P2P, e-mail, e-mail groups, bulletin boards, Internet Relay Chat ("IRC"), newsgroups, instant messaging, and other similar vehicles.

d. The majority of individuals who produce, distribute, and/or collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in private and secure locations such as their homes or on electronic storage devices.

## **PROBABLE CAUSE**

22. This investigation began from a lead in Canada about a person in Connecticut using the identity "joechimo" to distribute child pornography.

23. Specifically, Canadian law enforcement officers reported to HSI that on March 22, 2016, an officer with the Saskatchewan Police Service (SPS) in Saskatchewan, Canada, arrested an individual (hereinafter "John Doe") for parole violations.[1] Pursuant to the arrest, SPS seized John Doe's iPhone. John Doe told SPS that he had been using an online mobile chat

---

[1] John Doe's true name is known to law enforcement. This investigation remains active and disclosure of Doe's true name would potentially alert investigative suspects to the fact that law enforcement action is being taken, thereby provoking suspects to notify other users of law enforcement action, flee, and/or destroy evidence.

application to download and distribute child pornography images and videos to a network of other users of the mobile chat application. He provided SPS his username and login information for the application and gave SPS consent to take over and use his account to conduct investigations and gather evidence. This chat application is hereinafter referred to as "Application A."[2] HSI was not involved with John Doe's arrest.

24.     "Application A" is designed for mobile chatting or messaging. To use this application, a user downloads the application to a mobile phone or other mobile device via a service such as Google Play Store, Apple iTunes, or another similar provider. Once downloaded and installed, the user is prompted to create an account and username. The user also has a display name, which is what other users see when transmitting messages back and forth. Once the user has created an account, the user is able to locate other users via a search feature, and the two parties can then send each other messages, images, and videos.

25.     "Application A" users are also able to create chat groups, of up to 50 people, to communicate in a group setting and exchange images and videos. These groups are administered by the group creator who has the authority to remove and ban other users from the created group. Once the group is created, "Application A" users have the option of sharing a link to the group that includes all of their contacts or any other user. These groups are frequently created with a "hashtag" that is easily identifiable or searchable by keyword.

---

[2] The actual name of "Application A" is known to law enforcement. This chat application remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the application will be identified herein as "Application A."

26.     SPS was able to log in and secure John Doe's "Application A" account.  In reviewing the chat conversations held with John Doe's account, SPS was able to identify 72 unique "Application A" users who had shared at least one image or video of child pornography with John Doe directly, or who had posted child pornography in one of the "Application A" groups to which John Doe belonged, and six "Application A" users who had posted a message between or commented on child pornography images or videos.  Many of the groups to which John Doe belonged had names that included terms that your affiant knows through training and experience to be suggestive of child pornography.

27.     SPS logged all of the information regarding the messages and saved all of the images and videos of child pornography shared with John Doe's account.  SPS sent preservation requests to "Application A" regarding all 78 accounts referenced in the previous paragraph between April 20 and April 30, 2016.  SPS transmitted to HSI the information logged and saved from the review of John Doe's "Application A" account.

28.     On June 28, 2016, a Production Order was issued by a Provincial Court Judge in Saskatchewan, Canada, ordering "Application A" to produce user information and saved content regarding these 78 accounts.  On September 15, 2016, SPS received the requested results from "Application A."  The information received from "Application A," including the Certification of Records provided by "Application A," was transmitted to HSI, along with a copy of the Production Order issued by the Provincial Court Judge.

29.     The results provided by "Application A" included, among other things, additional images and videos of child pornography recently shared by the 78 accounts.  This included both child pornography shared with John Doe and child pornography shared with other

14

Case 3:18-mj-00454-WIC   SEALED   Document 1   Filed 03/19/18   Page 16 of 27

individuals and groups not related to John Doe's account.  Additional Production Orders were

served on "Application A" for information regarding the "Application A" accounts who shared

child pornography with the originally investigated 78 accounts, leading to the identification of

additional "Application A" accounts beyond the 78 accounts that shared child pornography with

John Doe.

30.     Your affiant has reviewed the information received from "Application A."  A

review of that information shows that between March 30, 2016 and May 4, 2016 an

"Application A" user with the account name "joechimo" used "Application A" to share images

and videos of child pornography.  Specifically, the evidence of distribution of child

pornography involved "joechimo" sending images and videos to two different Application A

users, as follows:

   a.  The following eleven images and or videos were shared by "Application A"

        user joechimo to another individual "Application A" user:

|   | Date/Time | Description[3] |
|---|---|---|
| 1. | 2016-03-30 01:51:46 UTC | Video of a female aged 8-14 performing oral sex on a male |
| 2. | 2016-03-30 10:00:37 UTC | Video of 2 naked females aged 8-14. One female on all fours exposing her vagina and anus. One female is using a purple sex toy to penetrate the other female's vagina. At the conclusion the females kiss each other |
| 3. | 2016-04-13 22:34:28 UTC | Same as video# 2 |
| 4. | 2016-04-13 21:25:48 UTC | Same 2 females as in video# 2.  This video seems to be taken a few seconds before the start of video# 2.  One female is lying on her back as the other female penetrates |

---

[3] Your Affiant has reviewed each of the videos and images listed in this chart and the chart in paragraph 16(b).  The ages listed are Your Affiant's estimation based on my training and experience.  Information from the National Center for Missing and Exploited Children is being sought to determine whether the images have been identified and if the age of the person depicted has been determined.



Case 3:18-mj-00454-WIC   SEALED    Document 1    Filed 03/19/18    Page 17 of 27

| | | her anus with a purple sex toy.  The video then proceeds into video# 2 |
|---|---|---|
| 5. | 2016-04-13 21:26:02 UTC | Same as video #4 |
| 6. | 2016-03-30 00:45:57 UTC | Image of a naked female aged 8-14 sitting on a couch with her legs spread open exposing her vagina |
| 7. | 2016-03-30 00:48:06 UTC | Video of a male penetrating a young female who is bent over from behind.  Difficult to determine age of female as no head shot |
| 8. | 2016-03-30 00:48:07 UTC | Video of female aged 12-18 lying on a bed masturbating with a green sex toy |
| 9. | 2016-03-30 00:49:46 UTC | Image of a partially naked female age 7-12 with her legs open and an erect penis in her anus |
| 10. | 2016-03-30 00:49:46 UTC | Same as image# 9 |
| 11. | 2016-03-31 01:00:38 UTC | Image of 2 naked females aged 12-18. One female is penetrating the other females vagina using a strap on sex toy |

b. The following twenty four images and or videos were shared by "Application A" user "joechimo" to another individual "Application A" user:

| | Date/Time | Description |
|---|---|---|
| 1. | 2016-04-04 13:34:27 UTC | Image of 2 naked females ages 7-12 sitting on couch with legs open exposing their vaginas |
| 2. | 2016-04-05 23:51:41 UTC | Video of naked female aged 12-18 performing oral sex on an adult male |
| 3. | 2016-04-05 23:52:01 UTC | Image of a naked female aged 10-14 performing a handstand on a couch with her legs spread open exposing her vagina and anus |
| 4. | 2016-04-07 02:38:40 UTC | Image of a clothed female aged 7-14 posing for a picture |
| 5. | 2016-04-07 02:43:53 UTC | Image of a naked female aged 7-14 lying on a couch with her legs spread open exposing her vagina |
| 6. | 2016-04-07 02:44:03 UTC | Same as Image# 3 |

Case 3:18-mj-00454-WIG *SEALED*   Document 1   Filed 03/19/18   Page 18 of 27

| 7. | 2016-04-07 02:44:16 UTC | Image of two naked females aged 10-16 standing in a shower |
|---|---|---|
| 8. | 2016-04-07 02:44:26 UTC | Image of two naked females (same females as image# 7) standing in the shower |
| 9. | 2016-04-07 03:16:14 UTC | Video of an adult male fingering a naked female aged 8-12 vagina.  The female also performs oral sex on the adult male |
| 10. | 2016-04-10 12:23:09 UTC | Video of same adult male (as in video# 9) penetrating a naked female who is wearing a mask aged 8-12 with a sex toy in her anus.  The male also ejaculates into the females mouth.  At the end of the video, a description appears saying "starring 8 year old Tara, filmed February 6th, 2007". |
| 11. | 2016-04-10 12:23:10 UTC | Same as video#10 |
| 12. | 2016-04-10 12:23:49 UTC | Video of a topless female aged 8-14 can't see below chest performing oral sex on an adult male |
| 13. | 2016-04-10 14:32:14 UTC | Image of a naked female age not possible as no head shot |
| 14. | 2016-04-10 14:36:35 UTC | Image of a naked females vagina and anus age not possible as no head shot |
| 15. | 2016-04-12 00:17:26 UTC | Image of a clothed female aged 8-12 posing for a picture |
| 16. | 2016-04-13 21:25:43 UTC | Image of a partially naked female age 7-12 with her legs open and an erect penis in her anus |
| 17. | 2016-04-13 22:22:17 UTC | Image of 2 naked females aged 12-18. One female is penetrating the other females vagina using a strap on sex toy |
| 18. | 2016-04-24 12:50:15 UTC | Same video as video# 10 |
| 19. | 2016-04-24 21:00:14 UTC | Video of a female aged 10-16 who is sitting on a chair and proceeds to take of her clothes |
| 20. | 2016-04-26 19:44:19 UTC | Video of a female aged 12-18 sitting on a bed stroking a males penis |
| 21. | 2016-04-26 20:00:30 UTC | Video of a female aged 10-16 showing her clothed crotch area and then taking off her shirt exposing her bare chest |
| 22. | 2016-04-26 20:00:31 UTC | Same as video# 21 |
| 23. | 2016-04-26 20:00:31 UTC | Same as video# 21 |

| 24. | 2016-05-04 03:26:00 UTC | Image of 47 smaller pictures of 2 females aged 12-16 performing oral sex |
| --- | --- | --- |

31.     The information provided by "Application A" to the SPS included that the "joechimo" account was registered on "Application A" on January 16, 2012.   In addition, on or about February 20, 2017, the "joechimo" account was accessed on "Application A" by a Verizon android Model SCH-1545V, which matches the model number of a Samsung Phone seized from Brien PENNELL.

32.     In addition, "Application A" identified the IP addresses used by "joechimo" on August 21, 2017 as 69.119.235.180.  A query of the American Registry for Internet Numbers ("ARIN") online database revealed that IP address 69.119.235.180 was assigned to Optimum Online c/o Yaana Technologies, LLC ("Optimum").  On August 23, 2017, a U.S. Department of Homeland Security summons was issued to Optimum in regards to the IP address described above.  A review of the results obtained on October 9, 2017, revealed that on August 21, 2017, IP Address 69.119.235.180 was assigned to an account registered to PENNELL.  The data received from Optimum further revealed that PENNELL has been an Optimum account holder since on or about May 6, 2015, and listed the following information for PENNELL:

Brien PENNELL



33.     A check of publicly available databases also revealed that Brien PENNELL currently resides at the address listed in paragraph 32.

18

34.     A check with the Connecticut Sex Offender Registry on or about January 23, 2017 revealed that an individual named Brien PENNELL with a year of birth of 1988 resides at the address listed in paragraph 18 and is on the CT Sex Offender Registry.

35.     Brien PENNELL is a convicted felon and a registered sex offender in the state of Connecticut. PENNELL was convicted on 02/08/2009 for Illegal possession of child pornography, the Sexual Assault 2nd of a Minor, and the Risk of Injury to a minor involving contact with the intimate parts of someone under the age of 16. PENNELL served 30 months in prison and was sentenced to 15 years probation.

36.     A check with the Connecticut Division of Probation on or about January 23, 2017, revealed that an individual named Brien PENNELL with a year of birth of 1988 resides at the address listed in paragraph 27.

37.     On February 2, 2018, after learning of the information relating to the distribution of child pornography associated with the IP Address for PENNELL'S residence, CT State Probation conducted a compliance search of PENNELL's person, vehicle and residence. Probation officers seized numerous electronic media devices from the vehicle and residence of PENNELL, including a Samsung Galaxy S4 16GB smart phone model SCH-1545V ("Samsung Phone"), an Amazon Fire Tablet ("Amazon Tablet"), a Grey 512MB PNY USB stick and a Black Scan Disk 8GB USB stick. Probation officers noted to SA Manganiello that the Samsung Phone and Amazon Tablet were located in a hidden compartment under the steering wheel of PENNELL's vehicle. Probation officers further noted that an Optimum invoice addressed to Brien PENNELL at ███████████████ Stamford, CT 06901, was found in his vehicle.

38.     On February 2, 2018, PENNELL was arrested for violation of his probation and was held on a $150,000 bond. Subsequently, he posted bond and remains at liberty.

39.     On February 8, 2018, your affiant interviewed Witness A, PENNELL's fiancé, a police officer for a local police department. Witness A stated that she had been residing in the residence in Stamford with PENNELL for several years. In her interview, Witness A admitted that she knew PENNELL was using the Wi-Fi in their shared apartment even though it was prohibited by his terms of probation. Witness A denied knowing that PENNELL used the internet to access or share child pornography, but admitted that PENNELL had online social media and email accounts under false names. She could not recall the names of those fake accounts, but denied any knowledge of the name "joechimo."

40.     Witness A reviewed the list of items seized from the probation search. She identified those items that belonged to her and executed consent to search all of the electronics that she identified as belonging to her. Witness A identified the Samsung Phone and the Amazon Tablet as belonging to PENNELL. Witness A stated that she saw PENNELL use both devices and that he accessed the Wi-Fi to use those devices. Witness A knew that PENNELL did not use the Samsung Phone to communicate with the Probation Officer and, instead, that he used a probation-approved flip phone.

41.     On February 14, 2018, HSI special agents executed a federal search warrant on the Samsung Phone, Amazon Tablet and other electronic storage devices.

42.     Your affiant reviewed the initial computer forensic report from the Samsung Phone, which provided the following digital evidence:

20

a. The forensic report contained digital evidence that the Samsung Phone was used to log onto "Application A" under user name joechimo's account;

b. The forensic report contained digital evidence that the Samsung Phone was used to log into a Dropbox account linked to email account joe.chimo@yahoo.com;

c. The Samsung Phone contained four (4) video links associated with Dropbox account linked to email account joe.chimo@yahoo.com as follows:



    i)   Name: ██████████████████████████████████████ ██████████████████████████████████wmv"

   Path: DropBox joe.chimo@yahoo.com/Root/Newe████████████ ████████████████████████████████████ ████████████wmv

    ii)  Name: ██████████████████████████████ █████.mp4

   Path: DropBox joe.chimo@yahoo.com/Root/Newe ww/all videos/V1████ ████████████████████████.mp4

    iii) Name: Pthc Pedo - ███████████████████████ ████avi

   Path: DropBox joe.chimo@yahoo.com/Root/Newe ww/all videos/V2/Pthc ███ ██████████████████████avi

    iv.  Name: ██████████████████████████████ ███████████mpg

21

Path: DropBox joe.chimo@yahoo.com/Root/Newe ww/all videos/█████████

████████████ █████ ████████████████ ██

████████████ ████mpg.

## CONCLUSION

43.     Based on my training and experience and the aforementioned factual

information, there is probable cause to believe, and I do believe, that evidence of the TARGET

OFFENSES is located within the TARGET ACCOUNT, which constitutes and contains items

that constitute contraband, fruits, instrumentalities and evidence of crime, or material otherwise

criminally possessed, or property that is or has been used as the means of committing the

TARGET OFFENSES.

44.     In consideration of the foregoing, I respectfully request that this Court issue a

warrant authorizing the search of the TARGET ACCOUNT, further described in Attachment A,

for the items more specifically identified in Attachment B.

45.     *Manner of execution.*  This warrant seeks only permission to examine information

associated with an account owned and controlled by Drobbox and does not involve the physical

intrusion onto a premise.  Moreover, Your Affiant is unaware of the time when Dropbox may

gather the requested information. Consequently, I submit there is reasonable cause for the Court

to authorize execution of the warrant at any time in the day or night.

## REQUEST TO SEAL

46.     Because this is an application that pertains to an ongoing criminal investigation,

and because disclosure of the information contained herein as well as disclosure of the search

warrant being requested herein may compromise the investigation and lead to the destruction of



evidence, I respectfully request that the search warrants, applications, and this affidavit be ordered sealed by the Court, until further order of the Court, except that copies of the search warrants may be provided on the Providers so that the search warrants can be executed.

Michael Manganiello
Special Agent
Homeland Security Investigations

Sworn and subscribed before me this ___ day of ___, 2018.

s/William I. Garfinkel

WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE

23

## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED

### I.      Information to be disclosed by Dropbox:

To the extent that the information described in Attachment A is within the possession, custody, or control of Dropbox, Inc., including any messages, records, files, logs, or information that have been deleted, but are still available to Dropbox, Inc. or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Dropbox, Inc. is required to disclose the following information to the government for each account or identifier listed on the Search Warrant:

a.      The contents of all folders associated with the account, including stored or preserved copies of files sent to and from the account, the source and destination addresses associated with file, and the date and time at which each file was sent;

b.      All transactional information of all activity of the Dropbox, Inc. accounts described above, including log files, messaging logs, records of session times and durations, dates and times of connecting, and methods of connecting: and emails "invites" sent or received via Dropbox, Inc. and any contact lists.

c.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

25

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between Dropbox, Inc. and any person regarding the account or identifier, including contacts with support services and records of actions taken.

**II.     Information to be seized by the government:**

All information described above in Section I that constitute fruits, evidence and instrumentalities of the crimes of knowingly producing, receiving, distributing and possessing child pornography and visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) and 2252A(a) (collectively, the "TARGET OFFENSES") for each account or identifier listed on the Search Warrant, including information pertaining to the following:

   **a.**  All images and videos depicting minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256;

   **b.**  All electronic communications regarding children engaging in sexually explicit conduct, including the possession, receipt or distribution of images of child pornography;

   **c.**  Any evidence that would tend to identify the person using the account when any of the items listed in subparagraphs a and b were sent, read, copies or downloaded; or

   **d.**  Records relating to who created, used, accessed or communicated with the account or identifier, including records about their identities or whereabouts.

    **e.**  Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Search Warrant;

    **f.**  The following information for all accounts for which information is provided:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations and IP history log;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), MSISDN, International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Station Equipment Identities ("IMEI"));
7. the contents of any address book, buddy lists, or other forms of contact information;
8. Other subscriber numbers or identities (including temporarily assigned network addresses and registration IP addresses (including carrier grade natting addresses or ports)); and
9. Means and source of payment for such service (including any credit card or bank account number) and billing record.

## III.   Method of delivery

    Items seized pursuant to this search warrant can be served by sending in encrypted format, on any digital media device, to Special Agent Michael Manganiello, Homeland Security Investigations, 150 Court Street, Suite 615, New Haven, CT 06510 or emailed to michael.a.manganiello@ice.dhs.gov.